# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA GREAT BUTTE DIVISION

| | |
|---|---|
| REECE COX and JODY HERTZOG, | **CV 16-47-BU-BMM** |
| Plaintiffs, | |
| vs. | |
| NORTHWESTERN CORPORATION d/b/a NORTHWESTERN ENERGY and DOES 1-25, | **ORDER** |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Reece Cox and Jody Hertzog own a house located at 132 Shirley Way in Anaconda, Montana. (Doc. 13 at 2.) Defendant Northwestern Corporation, d/b/a Northwestern Energy ("Northwestern"), operates powerlines that run adjacent and "in close proximity" to Plaintiffs' house. *Id*. Plaintiffs' Amended Complaint contains eight counts against Northwestern alleging various acts of trespass, negligence, private nuisance, takings, strict liability, and failure to warn. *Id*. at 4-21. Plaintiffs seek compensatory and punitive damages. *Id*. at 21.

Northwestern moves the Court for summary judgment on Counts 1-8. (Docs. 52; 53 at 2.) For the reasons below, the Court will deny the motion.

1

## II. BACKGROUND

Shortly after Plaintiffs purchased their house, Plaintiffs "discovered very high voltage and [electric and magnetic fields] were intruding the exterior and interior of their house." (Doc. 13 at 3, ¶ 7.) Northwestern verified that the powerlines were emitting high voltage on the exterior of the house. *Id.* at 3, ¶ 8. An independent electrician verified that "irregular high voltage" from the powerlines was passing through to the interior of Plaintiffs' house. *Id.* at 3, ¶¶ 8-9.

## III. TIMELINESS

Northwestern moves the Court to consider its Motion for Summary Judgment timely filed. (Doc. 56.) Plaintiffs oppose the motion. (Doc. 57.)

This Court issued a Scheduling Order on July 12, 2017. (Doc. 22.) The Scheduling Order required the parties to file and fully brief all pretrial motions by May 4, 2018. *Id.* at 2. The Scheduling Order mandated that the parties file motions within enough time that the brief in support of the motion and the opposing party's response would be filed before the deadline. *Id.* at 3-4.

Responses to motions for summary judgment must be filed within twenty-one days after the filing of the motion. D. Mont. L.R. 7.1(d)(1)(B)(i). To meet the Court's "fully briefed" deadline, Northwestern should have filed its motion for summary judgment by April 11, 2018. Northwestern filed its motion for summary judgment on May 4, 2018. (Doc. 52.) Plaintiffs responded on May 25, 2018. (Doc.

59.)

Northwestern argues that the Court should excuse its tardy filing because Northwestern acted diligently. (Doc. 56-1 at 5.) In support, Counsel submitted an affidavit regarding Northwestern's attempts to access Plaintiffs' property to procure updated data regarding the component parts and function of the electrical transmission line running through Plaintiffs' property. (Doc. 56-1.) Plaintiffs initially declined to allow Northwestern's employees access to their property because discovery had closed. *Id*. at 3. Plaintiffs ultimately agreed to allow Northwestern to examine their property. *Id*. at 4. Northwestern examined Plaintiffs' property on April 26, 2018. *Id*.

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Plaintiffs argue that Northwestern's failure to move to modify the July 12, 2017, Scheduling Order in advance of the tardy filing prevents Northwestern from so moving now. Northwestern relies on Federal Rule of Civil Procedure 6(b)(1)(B), which affords the Court the ability to extend time "on motion made after the time has expired if the party failed to act because of excusable neglect."

The Court notes that Northwestern failed to move for an extension of time to file pretrial motions. The Court further acknowledges that discovery had closed at the time Northwestern sought to re-examine Plaintiff's property, and that

Northwestern's reason for the re-examination—that an employee had left the company—did not confer upon Plaintiffs the responsibility to accommodate out-of-time discovery requests.

The Court finds, however, that Northwestern's tardy filing caused only minor delay. The parties have now fully briefed the motion for summary judgment, and the Court finds no indication of prejudice because of the delay. The Court will consider Northwestern's motion timely filed.

## IV. LEGAL STANDARD

A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court will grant summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## V. DISCUSSION

Northwestern raises multiple grounds in support of its motion for summary judgment. (Doc. 53 at 6-17.) In brief, Northwestern claims: 1) that the easement held by Northwestern across Plaintiffs' property defeats Plaintiffs' trespass claims (Counts I and II); 2) that the condition of the powerline is not in dispute, and that compliance with the National Electrical Safety Code (NESC) thus defeats

Plaintiffs' negligence claim (Count III); 3) that Northwestern's easement defeats Plaintiff's negligence claim regarding tree removal (Count IV); 4) that the powerline cannot constitute a "private nuisance" because Montana law exempts acts taken pursuant to express authorization by statute (Count V); 5) that Plaintiffs' private taking or inverse condemnation claim fails because the easement and the powerline predate the construction of the house or its possession by the Plaintiffs (Count VI); and 6) that Plaintiffs' products liability and failure to warn claims fail because the record lacks testimony tending to establish that the powerline or the electricity carried by the line is defective (Counts VII and VIII). *Id*. at 6-14. Northwestern further challenges Plaintiffs' assertion that they are entitled to punitive damages. *Id*. at 14.

## I. Northwestern's Easement (Counts I, II, IV)

Northwestern claims that its easement to construct and operate the powerline prevents Plaintiffs from recovering for electricity flowing onto and through Plaintiffs' home, and the removal of a tree from Plaintiffs' property.

Plaintiffs dispute that Northwestern has demonstrated that its easements cross Plaintiffs' property. (Doc. 60 at 3-4.) Plaintiffs additionally dispute that Northwestern possesses any easement allowing Northwestern to emit electric or magnetic fields into or onto Plaintiffs' property. (Doc. 13 at 4.)

The record developed at this stage fails to establish the relationship of the easement to Plaintiffs land. The record further lacks information regarding the scope of the easement. Whether Northwestern has exceeded the scope of any easement that may exist on Plaintiffs' land represents a dispute as to a material fact for the jury to resolve.

Similar issues regarding the status of the easement apply to the tree removal claim. The record lacks further the requisite undisputed facts about the tree in question and whether the tree fell within the scope of any easement that may exist on Plaintiffs' land. These questions represent disputes as to material facts for the jury to resolve.

## II.     Statutory Compliance and Authorization (Counts III, V, VII, VIII)

Northwestern claims that the line's compliance with the NESC defeats Plaintiffs' negligence claim. Northwestern similarly claims that the powerline cannot constitute a private nuisance because the Montana legislature expressly authorized construction of the line. Northwestern's argument that Plaintiffs cannot succeed on theories of strict products liability or failure to warn also hinges on compliance with the NESC and the absence of expert testimony to the contrary.

The line's alleged compliance with the NESC does not defeat Plaintiffs'

negligence claim at this stage. The Montana Supreme Court has recognized that a danger may exist "beyond the minimum which [the NESC] was designed to meet" which provides the jury with the opportunity to decide whether a defendant should be found negligent for failure to prevent that danger. *Martel v. Montana Power Company*, 231 Mont. 96, 104 752 P.2d 140, 145 (1988). Further, the underlying factual dispute regarding the location of the easement and lines relative to Plaintiffs' property may prove that the lines in question do not meet the statutory exemption.

Northwestern reasons additionally that it cannot be held liable for private nuisance because it exists as a public utility regulated by the Montana Public Service Commission and, as such, it operates its lines under the express authority of a statute. Northwestern claims to possess no statutory authorization for its lines to transmit electricity onto Plaintiffs' property. Further, given the factual dispute regarding the easement, the Court cannot determine at this juncture whether Northwestern's operation of the line in question falls within any statutory authorization that it claims to possess.

### III. Taking Claim (VI)

The factual ambiguity regarding the scope and location of the easement defeats at this stage Northwestern's argument that the easement preempts

Plaintiffs' taking claim.

Additionally, Northwestern's argument fails because it misapprehends Plaintiffs' claims. Plaintiffs claim that Northwestern's transmission of electricity onto Plaintiffs' property constitutes a taking. Whether this condition existed when Plaintiffs purchased the house presents a question of fact independent of the date of any easement or construction of the lines themselves.

## IV.    Punitive Damages

Northwestern argues in closing that Plaintiffs cannot demonstrate that Northwestern has acted with indifference toward Plaintiffs' alleged trespass as required by statute for an award of punitive damages. (Doc. 53 at 14); Mont. Code Ann. § 27-1-221.

The undisputed facts reflect that Northwestern dispatched a serviceman to Plaintiffs' property on August 25, 2015. (Docs. 53 at 15; 13 at 3.) Northwestern's employee informed Plaintiffs that they would need to hire an electrician to correct the problem. Plaintiffs subsequently contacted a private electrician, who explained the repairs necessary to ground Plaintiffs' property to mitigate the problem.

Northwestern's conduct, on these facts, does not appear egregious. Questions of fact persist regarding the necessary repairs, however, including the costs of such repairs and whether such repairs successfully mitigate the trespass.

Further, the alleged trespass concerns stray electricity encroaching on Plaintiff's property. The fact that Plaintiffs potentially could mitigate that trespass may not remove the burden on Northwestern to act likewise to prevent its alleged trespass. A reasonable jury could weigh the facts to find that Northwestern has acted with the indifference required to merit an award of punitive damages.

## I.**ORDER**

Accordingly, **IT IS ORDERED** that Northwestern Energy's Motion to Treat Northwestern's Motion for Summary Judgment as Timely Filed (Doc. 56) is **GRANTED**.

IT IS FURTHER ORDERED that Northwestern's Motion for Summary Judgment (Doc. 52) is **DENIED**.

DATED this 16th day of July, 2018.


_____
Brian Morris
United States District Court Judge